**UNITED STATES of America ex rel. Howard Charles LIPSITZ, Relator-Petitioner,**

v.

**Major General Gines PEREZ, Commanding General, Fort Jackson, South Carolina, Respondent.**

Civ. A. No. 66–397.

United States District Court
D. South Carolina,
Columbia Division.

Nov. 2, 1966.

George I. Alley, of Law, Kirkland, Aaron & Alley, Columbia, S. C., for relator-petitioner.

Terrell L. Glenn, U. S. Atty., and Marvin L. Smith, Asst. U. S. Atty., Columbia, S. C., for respondent.

HEMPHILL, District Judge.

Howard Charles Lipsitz petitions the court for relief from an alleged illegal induction under the Selective Service System.[1] He claims that the Selective Service Regulation 32 C.F.R. 1627.8 has not been complied with, and that therefore his induction was illegal. The Regulation provides as follows:

> The Local Board shall not issue an Order for a registrant to report for induction either during the period afforded the registrant to take an appeal to the President or during the period such an appeal is pending. Any order to report for induction which has been issued during either of such periods, shall be ineffective and shall be cancelled by the Local Board. Whenever an appeal to the President has been taken by a person entitled to do so, any order to report for induction which has previously been issued to the registrant shall be ineffective and shall be cancelled by the Local Board. 32 C.F.R. 1627.8.

Lipsitz maintains that an appeal which was pending before the President should have delayed or prevented his induction. When the matter was originally brought before the court the respondent, the Commanding General of Fort Jackson, was enjoined to take no action regarding the petitioner other than to continue with the basic infantry training which was then in progress. The injunction was dissolved after the hearing before the court. There existed no further hindrances which would have prevented the petitioner from continuing in the privilege of serving his country. Since then no further considerations or changed circumstances have been brought to the attention of the court. The court, therefore, in ruling on the petition makes the following findings of fact:

Howard Charles Lipsitz, a resident of Paterson, New Jersey, was attending Rutgers University when he reached age eighteen. He was required by law to register with the Selective Service System prior to September 28, 1958. On October 15, 1958 Lipsitz registered at New Brunswick, New Jersey, the location of Rutgers, giving as his reason for registering eighteen days late, "my classes at Rutgers University kept me from registering within the allotted time."

December 1, 1958: Lipsitz classified 1-A.

December 8, 1961: Notice was sent to the Petitioner showing that he would soon be selected for an Armed Forces physical and information concerning his status was desired by the Draft Board. He forwarded a questionnaire to his Local Board showing that he was a senior in college and would graduate in June 1962. The Local Board did not call him for a physical, apparently because he was then a student and in effect the Local Board granted him a deferment until he would graduate.

June 3, 1963: Petitioner again classified 1-A and on June 12, 1963 Lipsitz requested a personal appearance before the Local Board in order to appeal his

---

1. See 50 App.U.S.C.A. §§ 451–454 and §§ 455–471.

classification as he was then a full time teacher.

September 17, 1963: Notice sent to Petitioner to report for his Armed Forces physical on October 8, 1963.

September 19, 1963: Lipsitz submitted information to the Local Board that on September 17 he had enrolled at New York University for work toward his Master's Degree and he expected to graduate in June or July 1964.

October 23, 1963: Petitioner wrote the Selective Service System in Washington, D. C., requesting the law on the Selective Service System. He was furnished information on how he could obtain a copy of the law. At the hearing in this court Petitioner stated that he had received a copy of the regulations.

October 23, 1963: Petitioner sent a letter to President John F. Kennedy complaining of the attitude of the Local Board toward drafting college graduates; alleging that English teachers should not be drafted (Lipsitz taught English); stating that an Executive Order should be issued exempting teachers from the Army; reflecting that Lipsitz had already written his Congressman about the matter, and; setting forth "I don't like the idea of spending two years in the Advanced Combat Group as a few friends, ex-teachers, are currently doing."

November 4, 1963: An official from the National Selective Service Headquarters called to the Local Board to obtain information on Lipsitz.

November 18, 1963: Petitioner had a hearing before the Local Board. He desired a deferment as he was a teacher and as he was taking college courses toward his Master's Degree. He expected to obtain his Master's in the summer of 1964. The Board denied the deferment and continued him in a 1-A status by a 3-0 vote.

November 22, 1963: Lawrence Lipsitz, the brother of Petitioner, wrote President Kennedy, with copies to Senator Case, Senator Williams, and Representative Joelson, severely attacking the members of the Local Boards in Paterson, New Jersey, stating that Petitioner asked for a deferment until the end of the summer of 1964 in order to enable him to complete his year of teaching and obtain his Degree and that the same was refused. That after August 1964 the Petitioner would naturally expect a reappraisal of his status.

November 27, 1963: Petitioner appealed the findings of the Local Board and again requested a deferment.

November 27, 1963: Senator Case wrote General Hershey, the Director of the Selective Service System, concerning the Petitioner.

December 2, 1963: The Local Board granted Petitioner a deferment and classified him 2-A until June 1, 1964.

Between December 1963 and April 1964 there was considerable correspondence between General Hershey, Senator Case and Senator Williams concerning Petitioner's selective service status with the result that Petitioner's file was sent to the National Headquarters in Washington, D. C. for review.

June 1, 1964: Petitioner wrote the Local Board for a continued deferment as he was a teacher of Science and English. This in spite of the fact that it was the end of a school year. The Local Board refused the deferment and on July 1, 1964 Lipsitz was classified 1-A.

July 10, 1964: Lipsitz filed a notice of appeal of his classification. He stated that he planned to return to full time graduate study at New York University in September 1964 where he planned to take courses leading to a Doctorate.

July 10, 1964: Lipsitz wrote National Selective Service Headquarters complaining of the fact that a large percentage of men were being drafted from the Paterson, New Jersey, area.

During the month of July 1964 letters submitted to the Local Board concerning Petitioner's plans for college; request made by Petitioner for deferment.

August 6, 1964: Petitioner appealed from his 1-A classification of July 29, 1964.

September 3, 1964: Lipsitz appeared before the Local Board for a hearing on his appeal. The minutes of the meeting reflect that he had terminated his job as a teacher and that he planned to start school in September 1964 in a Government-financed course which would pay his fees and tuition and a salary of $75.00 per week. The course would not lead to a Doctorate but would give him credits toward a Doctor's Degree. He requested a deferment to take the course. The Local Board granted the deferment and classified him 2-A until May 22, 1965.

June 9, 1965: Petitioner classified 1-A.

June 18, 1965: Lipsitz applied to the Local Board for an occupational deferment as he desired to commence work with United Planning Organization on June 21, 1965 which work Petitioner felt was in the national interest.

July 14, 1965: Petitioner was classified 1-A.

July 23, 1965: A notice of appeal was filed by Lipsitz and a request was made for a personal appearance before the Local Board members.

September 1, 1965: Lipsitz appeared before the Local Board and presented his request for occupational deferment. The Local Board classified Lipsitz 1-A by a 4-0 vote.

September 9, 1965: Lipsitz filed a notice of appeal from his classification.

October 19, 1965: The State Appeal Board classified Lipsitz 1-A by a 3-0 vote.

October 26, 1965: A letter was sent from the United Planning Organization to United States Senator Clifford Case requesting that a deferment be granted for Lipsitz.

November 1, 1965: An order to report for induction on November 19, 1965 was forwarded to Petitioner.

November 3, 1965: The United Planning Organization forwarded a letter to the Local Board requesting a 30-day postponement of Lipsitz' November 19 induction date. The Local Board refused the postponement.

November 5, 1965: Letter sent from Petitioner to President Lyndon B. Johnson asking that the President personally intervene and review the case.

November 9, 1965: Lipsitz went to a Local Board in Washington, D. C. and requested a transfer to Washington, D. C. for induction. This was approved the same day.

November 18, 1965: The Transfer Board at Washington, D. C. ordered the Petitioner to report for induction on December 9, 1965.

November 24, 1965: The National Selective Service Headquarters in Washington, D. C. directed that Petitioner's induction be postponed and that his file be forwarded to the National Headquarters for review.

November 29, 1965: Notice sent to Petitioner from his Local Board postponing his induction to the December induction call. An accompanying letter with the notice of postponement stated that the induction was only being postponed and that the outstanding order to report for induction was not being cancelled.

December 29, 1965: Letter addressed from General Hershey to the Local Board giving notice of appeal to the President. The letter was received by the Local Board on January 7, 1966.

The Presidential Appeal Board considered Petitioner's case and on February 17, 1966 Petitioner was classified 1-A by the Presidential Appeal Board.

February 25, 1966: Petitioner's file was returned to the Local Board with a covering letter stating that a finding had been made by the Presidential Review Board.

March 3, 1966: Lipsitz received a notice of his 1-A classification by the Presidential Review Board.

March 3, 1966: Seven page letter sent by Lipsitz to President Lyndon B. Johnson with enclosures stating that subsequent to November 5, 1965 Lipsitz was

informed by Senator Case's office that his case would be taken before the Presidential Appeal Board. He was informed by his Local Board that he would be continued in a 1-A classification. He further stated that he would abide by the decision of the Review officials. Petitioner asked the President for a personal review of his case. Copies of the letter were forwarded to the Local Board, General Hershey, Senator Case, Congressman Charles Jackson, Congressman Charles Mathias of Maryland, Congressman Ellsworth of Kansas, Kermit Mohn, Directorate of Manpower Resources, and a copy to the Office of Assistant Secretary of Defense.

March 3, 1966: Petitioner wrote a letter to the Local Board requesting a reconsideration due to occupational deferment and enclosed a copy of the letter written to the President.

March 16, 1966: Letter sent from the National Selective Service Headquarters to Petitioner replying to his previous letters directed to the President stating that the action taken by the Presidential Review Board is final.

March 21, 1966: Lipsitz was ordered to report for induction on April 7, 1966.

March 29, 1966: The United Planning Organization wrote General Hershey asking that Lipsitz be deferred due to his employment with such organization.

March 29, 1966: Lipsitz wrote the Local Board requesting that his April 7 induction date be postponed because it comes during the Jewish holidays.

March 31, 1966: The Local Board rescheduled the induction date to April 18, 1966 in pursuance of Lipsitz' request.

April 1, 1966: Lipsitz went to Paterson, New Jersey and personally reviewed his Selective Service files.

April 5, 1966: Lipsitz wrote the Local Board with copies to President Johnson, General Hershey, Senator Case, and the Civil Liberties Union making general complaints concerning being inducted and stated that he had no official notice of the Presidential Review action except by word of mouth from Senator Case's office. He complained that the regulations were not strictly followed and Lipsitz in such letter quoted the regulations verbatim.

April 14, 1966: The Local Board advised Lipsitz that the evidence submitted by him does not justify reopening his case and he was directed to report for induction as ordered.

April 14, 1966: Petitioner applied to a Local Board in Washington, D. C. for transfer there for induction. Such transfer was approved on the same day.

April 19, 1966: Petitioner wrote the Local Board with copies to President Johnson, Senator Case and General Hershey requesting that the Local Board respond further to questions set forth in his letter to the Local Board of April 5, 1966.

April 21, 1966: The Local Transfer Board in Washington, D. C. ordered Petitioner to report for induction on May 17, 1966.

April 26, 1966: Lipsitz personally reviewed his file in Paterson, New Jersey.

April 30, 1966: Petitioner wrote the Local Board with enclosures stating that he had accepted a job with New York City which was essential employment. That he had accepted the job earlier in the year to commence work on May 16, 1966. He requested that his case be reopened and that he be reclassified for a period of one year.

May 3, 1966: The Local Board wrote Lipsitz declining to reopen his case and ordered him to report for induction as scheduled. This was passed by the Local Board by a vote of 4–0.

May 11, 1966: Letter sent by Petitioner to Robert S. McNamara with enclosures complaining of the Selective Service System.

ON MAY 17, 1966 HOWARD CHARLES LIPSITZ, THE RELATOR-PETITIONER WAS INDUCTED INTO THE ARMY!

On the foregoing facts the court makes the following conclusions of law.

■ Because of the alleged defect in his induction the petitioner requests the common law writ of habeas corpus. If he has been wrongfully inducted and if he is entitled to redress then this must be his remedy.

■ The first proposition to be considered is that everyone is subject to the selective service.[2] Congress has the power to impose compulsory military service on all under the jurisdiction of the sovereign and no one is exempt except by the grace of the government.[3] The obligation to render military service is inherent in citizenship.[4] Mr. Lipsitz must therefore demonstrate to the court that he is being detained wrongfully. Of course had he been classified in a deferred category the matter would never have arisen. The matter of his classification is not challenged directly here, but rather that after he was classified 1-A and instituted the Presidential appeal the Selective Service failed to comply with regulation 32 CFR 1627.8. The essence of the matter is that he was inducted under an Order which he maintains should have been made ineffective and cancelled by the local board during the pendency of his Presidential Appeal. He further claims that he had no notice that Presidential Appeal was being taken; that he was entitled to notice; and that as a result of the series of events he lost a substantial right, that being the opportunity to join a military reserve organization and obtaining the classification that would follow.

Careful scrutiny has been given to the record in this case. It is the opinion of the court that no view of the record would support finding any reasonable justification for further action. No error of significance has been committed by the Selective Service. While the sensibilities of this particular young man may be offended by the prospect of bearing arms for his country there is no credible and reasonable indication that he has been offended in the legal sense. However discomfited he may be in this situation the court cannot help him.

■■ Mr. Lipsitz was classified 1-A in 1965; the order to report for induction was issued November 1, 1965. He then personally directed an appeal to the President of the United States on November 5, 1965 specifically requesting personal Presidential intervention and review of his case. On December 29, 1965 General Hershey gave notice to the Local Board that the office of Director of Selective Service was appealing the classification of Lipsitz to the President. No notice of this Director-initiated appeal was forwarded to the petitioner. Without notice of appeal, arguably, the petitioner may have been unaware of the resulting operation of 32 C.F.R. 1627.8 and the cancellation of the order to report for induction. However, in the case of Mr. Lipsitz that is not an applicable consideration because he initiated a Presidential Appeal himself and further that he had actual knowledge of the Director-initiated appeal. This knowledge of the appeal was admittedly obtained through the office of Senator Clifford Case with which Lipsitz was in frequent contact. It is difficult to conceive of anything happening in the case without the petitioner's knowledge for few causes have ever been pursued with the dogged persistence that was demonstrated here. It is worthy of mention that although no formal notice of appeal was sent to the petitioner there was sent to him a notice that the order to report for induction had been postponed. Moreover, the petitioner possessed no right to have receipt

2. E. g., Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944); Richter v. United States, 181 F.2d 591 (9th Cir. 1950) cert. denied 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647.

3. E. g., Korte v. United States, 260 F.2d 633 (9th Cir. 1958) cert. denied 358 U.S. 928, 79 S.Ct. 313, 3 L.Ed.2d 301; United States v. Palmer, 223 F.2d 893 (3rd Cir. 1955); Local Draft Board No. 1 of Silver Bow County, Mont. v. Connors, 124 F.2d 388 (9th Cir. 1941).

4. Self v. United States, 150 F.2d 745 (4th Cir. 1945).

of the notice. See United States ex rel. Woodward v. Deahl, 151 F.2d 413 (8th Cir. 1945).

 The regulation, 32 C.F.R. 1627.8, provides that during the pendency of an appeal or the period for taking an appeal any order to report for induction "shall be ineffective and shall be cancelled by the Local Board." After December 29, 1965 when the Director appealed, the Local Board took no action to cancel the outstanding order to report. The order had been issued November 1, 1965 and postponed till the December call on November 24, 1965. By the terms of the Regulation itself the order to report was made ineffective by operation of law. The only manner in which it is alleged that the failure to formally issue a cancellation prejudiced the petitioner is that it prevented him from entering a reserve unit. The evidence against this possibility is overwhelming. Mr. Lipsitz was thoroughly familiar with the Selective Service Regulations. He possessed copies of the regulations. That he was on a familiar basis with the regulations including those regarding Presidential review was exhibited by his testimony as well as by the record.

Prior to January 20, 1966 Selective Service Operations Bulletin No. 277 was in effect which permitted a registrant, although he was under an order to report for induction, to enlist in the Reserves. On January 20, 1966 Operations Bulletin No. 287 was issued, which in effect prevented a registrant from joining the Reserves if he was under an order to report for induction. After Presidential review, the petitioner's order to report for induction was issued on March 21, 1966.

However, there was no period in which he was prevented from joining the Reserves as he was not under an order to report for induction between January 20 and March 21, 1966. Even if he had thought after January 20, 1966 that he was under an order to report for induc-

tion, he knew prior to March 3, 1966 that he had been granted a Presidential Review, and that it had effectively cancelled any outstanding order to report for induction. If he had desired to join the reserves, there was no bar to his entry between March 3, 1966 and March 21, 1966. The record in the case makes it difficult to believe that there was any sincere desire to enlist in a reserve component. However, the possibility was open to the petitioner from September 1958 to March 21, 1966. No rights of the petitioner had been prejudiced.

The Supreme Court has said in a leading Selective Service case: "The function of *habeas corpus is* exhausted when it is ascertained that the agency under whose order the petitioner is being held had jurisdiction to act. If the writ is to issue mere error in the proceeding which resulted in the detention is not sufficient." Eagles v. United States ex rel. Samuels, 329 U.S. 304, 311–312, 67 S.Ct. 313, 317, 91 L.Ed. 308 (1946). "The function of *habeas corpus* is not to correct a practice but only to ascertain whether the procedure complained of has resulted in an unlawful detention." Id. at 315, 67 S.Ct. at 319.

This articulate, educated young man has pit his wits against the Selective Service machinery for a long time. He exhibits great familiarity with the regulations and procedures.

 He has been deferred three times, has had his induction postponed four times. He has made six appeals and has had three hearings before the Local Board, one review by the State Board, and a review by the Presidential Appeal Board. Exemption from the draft is not a matter of right, but, to the contrary, is a matter of grace of the sovereign.[5] The petitioner has failed to show a meritorious claim for release. There was no illegality in his induction.

Proceedings dismissed.

And it is so ordered.

5. See note 3, supra and accompanying text.